UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **W. FRED KLOOTS, JR.**, et al., | ) | Case No. 5:04 CV 2152 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | (Resolving Docket Nos. 79, 80, 91, 93, 98, 99) |
| **AMERICAN EXPRESS TAX &** | ) | |
| **BUSINESS SERVICES, INC.**, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiffs filed this professional malpractice case in the Northern District of Ohio claiming federal question jurisdiction based on an Employee Retirement Income Security Act (ERISA) claim of breach of fiduciary duty, and under supplemental jurisdiction, plaintiffs raise state law claims of professional negligence, breach of contract and negligent misrepresentation. Plaintiffs allege that the defendants, Paul Stolic and American Express Tax & Business Services, Inc., were fiduciaries within the meaning of ERISA.  Plaintiffs claim that Mr. Stolic was retained to perform annual evaluations of closely held stock of plaintiff Leonard Insurance Services Agency, Inc. for purposes of the company's employee stock ownership plan (ESOP).  Mr. Stolic disputes this.  Plaintiffs further allege that Mr. Stolic had been a partner at non-party Hausser & Taylor LLP and that American Express Tax & Business Services is the successor-in-interest to Hausser & Taylor. Plaintiffs complain that Mr. Stolic was negligent in his valuation of closely-held Leonard Insurance Services Agency, Inc. shares held in its ESOP, resulting in the shares being overvalued.

5:04 CV 2152                                                         2

Defendants have moved for summary judgment (Docket No. 79), arguing, in part, that the federal district court lacks jurisdiction over plaintiffs' ERISA cause of action because the facts fail to support a breach of fiduciary claim , and that the state law causes of action are pre-empted under ERISA.  This first  issue is dispositive, and the court grants defendants' motion for summary judgment and  dismisses plaintiffs' motion for summary judgment on the state law claims, defendants' motion to strike expert testimony, plaintiffs' motion to strike references from defendants' memorandum, plaintiffs' motion to strike references from the defendants' opposition and defendants' motion for leave to file sur-rely, as moot (Docket Nos. 80, 91, 93, 98, 99).

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255.  The burden is upon the movant to demonstrate the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S.

5:04 CV 2152                                3

144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340.  Once the nonmoving party has responded , the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001).

Mr. Stolic, a certified public accountant, had as a certified public accountant been performing annual reviews of Leonard Insurance Services Agency in 1990.  In late 1990, the company established an ESOP, which specifically required the trustee to retain an independent appraiser to establish the fair market value of the Leonard Insurance Services Agency shares held by the ESOP.  Allegedly in connection with the ESOP, Mr. Stolic suggested National Resources Co. to perform a valuation of Leonard Insurance Services Agency shares.  The ESOP trustees engaged this firm to prepare annual stock valuation of shares until 1993.  According to plaintiffs, Mr. Stolic represented to the Leonard ESOP trustees that he and Hausser & Taylor were capable of performing an

5:04 CV 2152                                              4

independent valuation of the ESOP stock required by ERISA and that he represented the expertise with respect to accounting for ESOP.

These statements are vigorously disputed, but it is uncontroverted that Mr. Stolic did begin providing valuation of Leonard Insurance Services Agency shares. It is clear that he was retained to prepare stock valuation letters for the company, not the ESOP, based on a contractual formula for a buy/sell agreement between its directors and shareholders. The buy/sell provision of company contracts contained a formula of 1.5 times total income plus or minus the positive/negative book value of the company. No discount factor was mentioned, but Mr. Stolic applied a 25 percent discount, which he explained yielded the same result because he began his calculation with two times value.

There is no dispute that Mr. Stolic understood, at the time he valued the Leonard employer stock, that the Leonard shares held in the Leonard ESOP were required to be valued annually and that the trustees were using Hausser & Taylor and later American Express stock valuations for ESOP purposes, including their use to complete the ESOP's annual federal report form 5500 for the plan years ending December 31, 1994 through December 31, 1999. Mr. Stolic did provide valuation letters addressed to Leonard Insurance Services Agency, which would typically begin, "As requested we have developed a fair market value of Leonard Insurance Services Agency, Inc. as of December 31, [ ] Our determination was based on the data contained in the externally audited financial statement for the year ended December 31, [ ]."

5:04 CV 2152                                             5

The valuation method used in the company's buy/sell arrangement did not account for the complex set of factors approved by the U.S. Department of Labor for closely-held shares retained in an ESOP, and in November 1997 the U.S. Department of Labor began compliance investigation of the Leonard ESOP. In 2002 it determined that the ESOP valuation method was not a good faith fair market determination as required by ERISA. Plaintiffs point out that Mr. Stolic had not placed any disclaimer on the buy/sell valuation of company shares to restrict its use for that sole purpose, and so, according to plaintiffs, Mr. Stolic was a voluntary participant in the trustees overvaluation of the shares held in the ESOP. Mr. Stolic disputes this conclusion and argues that there was no acquiescence to the Leonard ESOP trustees' actions.

New valuations were demanded as a result of the audit and were obtained from Marsh-Berry Co.. The ESOP trustees conceded that the shares were overvalued and submitted their proposal for voluntary compliance with the U.S. Department of Labor agreeing to pay $500,000 into the ESOP for full restitution of the liability related to the audit. The proposal was accepted by the Department of Labor, which issued a no-action letter in February 2004. The U.S. Department of Labor also provided notice of prohibited transactions and terms of the no-action letter to the Internal Revenue Service which may cause the ESOP to be assessed a "prohibited transaction tax" pursuant to Internal Revenue Code §4975.

Cincinnati Insurance Company which had issued a trustee and fiduciary liability and employee benefits administrative coverage policy, paid $500,000 to the ESOP and appears in this action as plaintiff under the subrogation clause in the insurance contract entitling it to all right of

5:04 CV 2152                                  6

recovery of the trustees to the extent of its payment as subrogee of the ESOP trustees and Leonard Insurance Services Agency, Inc.

*Standing*:

Federal jurisdiction under 28 U.S.C. §1331 is dependent on the existence of a viable ERISA action in this matter. Plaintiffs' ERISA allegations are premised on §§404 and 405 of the Act, 29 U.S.C. §1104 and §1105, respectively, for breach of fiduciary responsibilities under 29 U.S.C. §1109 and §1132. In §1109 Congress has set out the liability for breach of fiduciary duty and Congress in 29 U.S.C. §1132(a) has permitted civil actions to be brought by a participant, beneficiary, fiduciary or the Secretary of Labor. The key subprovision is §1132(a)(2) which permits civil action, "by the Secretary, or by a participant, beneficiary or a fiduciary for appropriate relief under section 1109 of this title." (See ¶48 of Complaint, Docket No. 1). ERISA confers only limited standing to "participants," "beneficiaries." "fiduciaries" and the Secretary of Labor. *Swinney v. General Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995). The Sixth Circuit ". . . narrowly construe[s] ERISA to permit only the parties specifically enumerated to bring suit." *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004); *Teagardner v. Republic-Franklin, Inc. Pension Plan*, 909 F.2d 947, 951 (6th Cir. 1990).

Defendants point out that ¶47 of the complaint states that the aggrieved parties are Cincinnati Insurance Company, as partial subrogee of the trustees, and Leonard Insurance Services Agency. Leonard Insurance Agency according to the complaint is only the plan sponsor, and no claim is made that Leonard Insurance Services Agency is a plan fiduciary. Plaintiffs do not maintain

5:04 CV 2152                                    7

that Cincinnati Insurance Company or Leonard Insurance Services Agency are either "participants" or "beneficiaries." Thus, ¶47 asserts claims by non-fiduciaries, so consequently it appears that neither party identified as aggrieved in ¶47 has standing under §1132(a)(2) to seek relief under §1109 for breach of fiduciary duty.

The court notes that the *Cob Clearinghouse Corp.* decision made reference to Ninth Circuit law. The Ninth Circuit has in one limited instance permitted derivative standing in *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1376-79 (9th Cir. 1986), creating federal common standing for health care providers who had been assigned ERISA plan benefit claims. However, the Ninth Circuit has been reluctant to extend derivative standing any further. See *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000).

On the other hand, the Fifth Circuit, borrowing on the Ninth Circuit's holding in *Misic*, has been more expansive in its interpretation of federal common law derivative standing. See *Hermann Hospital v. MEBA Medical & Benefits Plan*, 847 F.2d 1286 (5th Cir. 1988); *Texas Life Accident Health & Hospital Service Insurance Guarantee Assoc. v. Gaylord Entertainment Co.*, 105 F.3d 210, 215-16 (5th Cir. 1997). In a nutshell, the Fifth Circuit reasoned that despite 29 U.S.C. §1056(b)'s prohibition against assignment or alienation of pension plan benefits, there was no prohibition against assignment of claims for breach of fiduciary duty. *Texas Life*, 105 F.3d at 215. The Fifth Circuit was concerned that, "[w]ithout derivative standing, plan administrators could never be held accountable for breaches of fiduciary duty," ( *Id.* at 215), and to allow derivative standing served

5:04 CV 2152                                          8

to "advance[ ] ERISA's goal of safeguarding pension funds." *Id.* at 215-16.[1]  In that circuit, derivative standing exists for a plan underwriter or insurer, but the concern was to fashion a remedy where there would otherwise be none. As shall be explained later in analyzing defendants' argument for ERISA's pre-emption of state claims, plaintiffs' state remedies remain extant, so no compelling need for derivative standing is presented.

The remaining aggrieved party under ¶47, Leonard Insurance Services Agency, is named as the ERISA plan sponsor. The Sixth Circuit in *Cob Clearinghouse* recognized that a plan sponsor could also stand in the capacity of a plan fiduciary. *Id.*, 362 F.3d at 881-82. Plaintiffs, however, do not attempt to establish that Leonard Insurance Services Agency was anything more than the plan sponsor. Since plan sponsors are not enumerated parties under §1132(a) then Leonard Insurance Services Agency also lacks standing. Thus neither entity identified in ¶47 seeking recovery against defendants has standing to bring suit under ERISA .

Plaintiffs' cases, *Raff v. Belstock*, 933 F.Supp. 909 (N.D. Calif. 1996) and *Petrilli v. McGladrey & Pullen LLP*, 957 F.Supp. 336, 166 ALR Fed. 795 (D. Conn. 1997), do not support a theory of federal common law derivative standing for an assignee or subrogee of the fiduciary. They concern the question of fiduciary to fiduciary demand for contribution or indemnification, but not the rights of subrogated insurers to stand in place of a plan fiduciary.

*Right of Contribution:*

---

[1] Ultimately, though, standing was denied because it arose by operation of the state law which is pre-empted by ERISA principles that assignment must be both express and knowing. *Texas Life*, 105 F.3d at 218-19.

5:04 CV 2152                                            9

The allegations raised in ¶¶ 47 and 48 of the complaint seek contribution from defendants whom plaintiffs maintain are plan fiduciaries.  Paragraph 48 identifies the trustees and Leonard Insurance Services Agency as the parties who have sustained losses for expenses by obtaining Marsh-Berry Co. to value Leonard Insurance Agency shares for the ESOP, retaining legal counsel to represent their interests in connection with the U.S. Department of Labor compliance audit, and further claim they will potentially sustain losses pursuant to Internal Revenue Code §4975.  Since ¶ 48 seeks contribution by the plan fiduciaries against defendants in their alleged capacity as co-fiduciaries, the issue of the right to contribution/indemnification becomes less theoretical, in comparison to the claims by non-fiduciaries in ¶ 47. ERISA though contains no provision for contribution claims among fiduciaries.  While *Raff* and *Petrilli* support ERISA contribution claims between fiduciaries as not precluded,  this court rejects the parties' arguments that contribution is permitted under ERISA, and  adopts the reasoning from  *May v. National Bank of Commerce* and sister courts, which explains:

> This Court will not reinvent the wheel and rewrite the many well-reasoned opinions that have already been published on this topic, all of which appear to rely on the same authorities in arriving at one decision or the other.  this Court believes the better view is that adopted by the Ninth Circuit, *Kim*, 817 F.2d at 1432-33, and the other district courts within the Sixth Circuit, *Williams [v. Provident Inv. Counsel, Inc.,]*, 279 F.Supp.2d at [894] 898-903 [(N.D. Ohio 2003)]; *Roberts v. Taussig*, 39 F.Supp.2d, 1010, 1011-12 (N.D. Ohio 1999); *Daniels v. Nat'l Employee Benefit Servs., Inc.,* 877 F.Supp. 1067, 1073-74 (N.D. Ohio 1995).  This view is more consistent with ERISA's statutory scheme, which is designed to protect beneficiaries and participants of employee benefit plans, and is likely to provide more expeditious litigation for these parties.  This Court concludes that ERISA does not provide for a right of contribution among fiduciaries and it is not appropriate to create such a right using federal common law.

5:04 CV 2152                                        10

*Id.*, 390 F.Supp.2d 674, 677 (W.D. Tenn. 2004).[2]

Accordingly, this court respectfully disagrees with the parties and finds the view of the sister courts to be more persuasive than that of the Second and Seventh Circuits. Consequently, ¶ 48 also fails to state a claim on which relief can be granted based on the material facts which are not in dispute.

The other obstacle to the allegations in ¶ 48 is that trustees cannot defray expenses from plan assets. See *Martin v. Walton*, 773 F.Supp. 1524 (S.D. Fla. 1991) (trustees found to have breached fiduciary duties could not delve into plan assets for legal fees); *State Street Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 140 (2nd Cir. 2003) (absent showing that lawsuits styled as brought on behalf of fund were brought for exclusive benefit of fund). Plaintiffs could not look to the plan for indemnification.) Therefore, aside from the problem with contribution/indemnification, there is no showing that the claim under 29 U.S.C. §1109 in ¶48 is made on behalf of the plan, with the funds being returned to the plan itself and not to reimburse the trustees for out-of-pocket expenses.

---

[2] See *McDannold v. Star Bank, NA*, 261 F.3d 478, 485-487 (6th Cir. 2001) (remanding on the question of whether fiduciary may claim a right of contribution). Finding no right to contribution, *Kim v. Fujikawa*, 871 F.2d 1427, 1432-33 (9th Cir. 1989); contrary view, *Chemung Canal Trust v. Sovran Bank/Maryland*, 939 F.2d 12, 15-18 (2nd Cir. 1991); *Free v. Briody*, 732 F.2d 1331, 1336-38 (7th Cir. 1984).

5:04 CV 2152                                                                 11

*Defendants are not fiduciaries*:

The final obstacle to plaintiffs' ERISA claim for breach of fiduciary duty is that they have not demonstrated that defendants gave "investment advice" and are therefore fiduciaries. 29 U.S.C. §1002 (21(A)(ii)) states "a person is a fiduciary with respect to the plan to the extent . . . he renders investment advise for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so . . ." Defendants argue that accountants are not fiduciaries citing *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, for its recognition of 29 C.F.R. §2509.75-5, issued under authority of the Secretary's rulemaking power in 29 U.S.C. §1335, which states, "attorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries." *Id.*, 879 F.2d 1146, 1151 (3rd Cir. 1989). Plaintiffs counter that Mr. Stolic knew his evaluations would be used for ESOP purposes and that the ESOP plan fiduciaries relied on those evaluations and thus defendants provided "investment advice" to the Leonard ESOP.

The Secretary's labor regulations define "investment advice" for ERISA purposes under 29 C.F.R. §2510.321 "Definition of 'Fiduciary.'"[3]

---

[3] The relevant portions of 29 CFR §2510 provide as follows:
§2510.3-21 Definition of "Fiduciary."
     . . .
          (c) Investment Advice.

     (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:

     (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

5:04 CV 2152                                             12

The court notes that in the early years plaintiffs did not show that Mr. Stolic submitted his valuations of the plan to the ESOP. See 29 U.S.C. §2510.3-21(c)(1)(i). However, beginning with Mr. Stolic's valuation letters dated March 31, 1998, March 8, 1999, March 14, 2000, March 12, 2001 and February 25, 2002, Mr. Fred Kloots, who also served as an ESOP trustee, was the intended recipient, hence a plan fiduciary, and arguably the valuation letters would constitute advice "to the plan." *Compare Ennis v. Montemayor*, 14 F.Supp.2d 379, 388 (S.D. N.Y. 1998) (partners in hedge fund did not provide advice to plan *per se*, but did so only with regard to partnership.) Since these later years fall within ERISA's six-year statute of limitations, the court must further scrutinize the evidence offered.

---

Such person either directly or indirectly (e.g., through or together with any affiliate) --

(A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

(B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

(2) A person who is a fiduciary with respect to a plan by reason of rendering investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or having any authority or responsibility to do so, shall not be deemed to be a fiduciary regarding any assets of the plan with respect to which such person does not have any discretionary authority, discretionary control or discretionary responsibility, does not exercise any authority or control, does not render investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, and does not have any authority or responsibility to render such investment advice, provided that nothing in this paragraph shall be deemed to: Exempt such person (from fiduciary breach liability 7; or Exclude such person from the definition of the term "party in interest". . .

5:04 CV 2152                                          13

In considering whether a person is an ERISA fiduciary, the court's inquiry must be focused on the function. *Briscoe v. Fine*, 444 F.3d 478, 488 (6th Cir. 2006). Taking plaintiffs' proof as true, plaintiffs have demonstrated some evidence that Mr. Stolic gave advice to the plan as to the value of securities, to fulfill the first step of 29 C.F.R. §2510.3-21(c)(1)(i). However plaintiffs have not shown discretionary authority or control with respect to purchasing or selling securities to satisfy the first of two additional alternate requirements under (c)(1)(i)(A).

Plaintiffs attempt to satisfy the second alternate requirement as set out in (c)(1)(i)(B) with reliance on similarities to *Petrilli*. That decision, though, did not attempt to analyze the "individualized investment" subclause of this regulation, ostensibly because it considered the matter under Rule 12(b) and would not foreclose the possibility of facts establishing participation in management decisions. However, in *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143 (D.D. C. 1986), the court succinctly explained:

> Certainly, American Appraisal had no authority, discretionary or otherwise, to manage, administer, or to deal with the Plan assets. Nor did its valuation of the U.S. News stock constitute "investment advice," as the Department of Labor's interpretive materials make clear. See 29 C.F.R. §2510.3-21(c)(1)(ii) (1984) ("investment advice" refers to matters such as "investment policy or strategy"); DOL Adv.Op. 76-75 (June 7, 1976) (consultant who values employer securities not a fiduciary). Generally, it has been deemed consonant with ERISA's purpose that "attorneys, accountants, actuaries and consultants performing their usual professional functions . . . [are not to] be considered fiduciaries." 29 C.F.R. §2509.75-5 (1984). Those services performed by American Appraisal were certainly no different.

5:04 CV 2152                                                                                         14

*Id*, 627 F.Supp. at 1167-68.  Accordingly an independent appraiser's valuation of company's sock in ESOP did not constitute "investment advise."

      The "individualized investment advice" subclause requires that such persons will render individualized investment advice "to the plan based on particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan assets."  29 C.F.R. §2510.3-21(c)(1)(i)(B).  Plaintiffs attempt to meet the requirements of this subclause with the deposition testimony of plaintiff, Mr. Gerald Staten.  Mr. Staten stated that investment advice responsibility was delegated to Mr. Stolic (Ex. L at 30-31).  However after stating that the trustees sought Mr. Stolic's investment advice at ESOP meetings which Mr. Stolic allegedly had attended, Mr. Staten had no recollection of any specific instance of investment advice but stated it could be obtained from ESOP trustee meeting minutes.  Plaintiffs have not produced any minutes to support Mr. Staten.  At best plaintiffs have shown only at some time Mr. Stolic would interpose himself in recommending "diversification," but plaintiffs have failed to show that they had engaged Mr. Stolic to provide advice on the particular needs of the plan.

      To summarize, plaintiff's ERISA claim for contribution in the amount of $500,000 was not brought by any of the enumerated parties having standing to bring a civil action under §1132(a)(2).  Further, ERISA does not allow for claims for contribution between the trustees and alleged plan fiduciaries, and further, the trustees have not demonstrated that their claim is solely for the benefit of the plan (noting that the non-fiduciary plan sponsor is involved).  Finally, Mr. Stolic and his employers were not acting in a fiduciary capacity.  Accordingly, defendants' motion for summary

5:04 CV 2152                                      15

judgment is granted because plaintiffs have failed to state a claim on which relief can be granted under ERISA, and consequently the court lacks federal question jurisdiction under ERISA.

*Pre-emption:*

Plaintiffs seek supplemental jurisdiction over state law based counts of professional negligence, breach of contract and negligent misrepresentation. The court opts to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367(c)(3) because the court lacks jurisdiction over plaintiffs' purported ERISA action. However, defendants argue that the common law claims purport to rise from services brought and directly related to the Leonard ESOP and that such these claims are pre-empted by ERISA. Moreover the court finds that pursuant to *Briscoe*, it should identify the claims which are not pre-empted prior to commencement of litigation in the state courts.

Congress intended ERISA provisions to supercede state law in 29 U.S.C. §1144(a), when the state law based cause of action "relate[s] to any employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Suits for recovery of benefits under a plan are in general pre-empted. *Cromwell v. Equicor-Equitable Corp.*, 944 F.2d 1222, 1226 (6th Cir. 1991); *cert. dismissed* 505 U.S. 1233 (1992); and see *Pilot Life*, 481 U.S. at 41 (breach of contract and bad faith claims arising out of alleged failure to provide plan benefits are pre-empted). However, suits, "whose effect on employee benefit plans is merely tenuous, remote or peripheral are not pre-empted." *Cromwell*, 944 F.2d at 1276; *Shaw*, 463 at 100 n. 21. Whether a matter is peripheral depends in large part on the remedy sought by plaintiffs. *Lions Volunteers Indus., Inc. v. Automated*

5:04 CV 2152                                              16

*Group Admin., Inc.*, 195 F.3d 803, 806 (6th Cir. 1999).  When the obligations arise from the plan itself, the suit is generally pre-empted.  See *Penny/Ohlmann-Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 699 (6th Cir. 2005) (breach of contract claim against plan fiduciary is pre-empted by §1109 and §1132(a)(2)'s cause of action for breach of fiduciary duty).

The Supreme Court has outlined three general areas of "relatedness" where pre-emption occurs when state law: "(1) 'mandates employee benefits structure or their administration;' (2) provides 'alternate enforcement mechanisms;' or (3) ' binds employer or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Penny/Ohlmann-Nieman, Inc.*, 399 F.3d at 698, quoting *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996) (outlining the categories recognized as pre-empted in *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

Suit for breach of contract against a non-fiduciary plan service provider falls into the peripheral area that is not sufficiently "related to" the plan because recovery under this remedy will not result in mandating a benefit structure, providing an alternate enforcement mechanism (as explained previously this action does not fall under 29 U.S.C. §1109 and its counterpart 29 U.S.C. §1132(a)(2)), or implicate the relationship between the traditional ERISA plan "entities."  See *Penny/Ohlmann-Nieman, Inc.*, 299 F.3d at 700.  *Smith v. Provident Bank*, 170 F.3d 609, 616-17 (6th Cir. 1999) (state law on duty of care owed by insurance professionals did not affect relations among principal ERISA entities).  Moreover, suit serves not to recover plan benefits, but to obtain damages

5:04 CV 2152                                                17

due to the alleged breach of contract. The shortfall in the plan assets serves only as a measure for these damages. *Id.* at 702; *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003); *Wright v. General Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001) ("simply a reference to specific ascertainable damages [the plaintiff] claims to have suffered"]. Accordingly, when "an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." *Smith v. Provident Bank*, 170 F.3d at 617. As a result, "the ERISA plan 'acquire[s] the same rights of action under state law as other entitles not created by ERISA.'" *Penny/Ohlmann-Nieman, Inc.*, 399 F.3d at 700 quoting *Provident Bank*, 170 F.3d at 617. In light of the foregoing, defendants' arguments that the remedies under ERISA are unavailable and further that the state causes of action are pre-empted is simply incorrect. *Provident Bank*, 170 F.3d at 617. Consequently, ERISA does not pre-empt the breach of contract claim against the non fiduciary defendants, or pre-empt claims for malpractice and negligence against non-fiduciaries. See *Provident Bank*, 170 F.3d at 616-17 (malpractice) *Coyne & Delaney Co.*, 98 F.3d at 1471-72 (malpractice); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 323 (2nd Cir. 2003) (negligence).

## *CONCLUSION*

Based on the foregoing reasons, defendants' motion for summary judgment is granted in part with judgment to be entered in favor of defendants to deny plaintiffs' claims under ERISA, but summary judgment is denied on defendants' argument that the state law based claims are pre-empted

5:04 CV 2152                                    18

by ERISA. Further, pursuant to 28 U.S.C. §1367(c)(3), the supplemental state law based claims are dismissed without prejudice since there is no original jurisdiction over an ERISA claim.

    IT IS SO ORDERED.

                                                      s/James S. Gallas
                                        United States Magistrate Judge

Dated: June 12, 2006